IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ESTATE OF LARRY SIMPSON )
) No. 3-04-0006
v. )
)
UNITED STATES OF AMERICA )

TO: Honorable Thomas A. Wiseman, Jr., Senior District Judge

## REPORT AND RECOMMENDATION

### I. BACKGROUND

The plaintiff Larry Simpson ("Mr. Simpson") initially filed this lawsuit on January 6, 2004, against the United States, asserting claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq., for injuries he sustained as a result of an explosion at the United States Army Aviation and Missile Command at the Redstone Arsenal in Huntsville, Alabama. Amanda McClendon ("McClendon") represented the plaintiff. The initial case management conference was held on April 14, 2004, and the initial case management order entered that day (Docket Entry No. 12). By contemporaneously entered order (Docket Entry No. 13), the Court clarified that deadlines for completion of discovery would not be established until after the resolution of the defendant's anticipated motion to dismiss. The defendant filed a motion to dismiss on September 15, 2004 (Docket Entry No. 14), but before the plaintiff filed a response to the motion, Phillip Davidson ("Davidson") sought to be substituted as counsel (Docket Entry No. 16). That motion, along with his request for additional time to respond to the pending motion to dismiss, was granted by order entered October 7, 2004 (Docket Entry No. 17). On November 12, 2004, McClendon filed a Notice

of Attorney Lien (Docket Entry No. 18) "in an amount that is unknown and shall to be determined by the court at the conclusion of this cause."[1]

The plaintiff moved to amend his complaint, the government moved to dismiss the amended complaint, and by order entered August 18, 2005 (Docket Entry No. 30), the Court granted the plaintiff's motion to amend and denied the defendant's motions to dismiss.

In the meantime, on April 10, 2005, the plaintiff died. By order entered September 20, 2005 (Docket Entry No. 32), the Estate of Larry Simpson was substituted for the plaintiff. Another case management conference was held on September 20, 2005, and a case management order entered October 4, 2005 (Docket Entry No. 33), setting out, inter alia, deadlines for the progression of the case. The defendant filed a motion for summary judgment on August 31, 2006 (Docket Entry No. 46), which was denied by order entered December 1, 2006 (Docket Entry No. 61).

Upon the parties' request, a settlement conference was conducted by Magistrate Judge Knowles on January 26, 2007, at the conclusion of which the parties were able to reach a settlement. By the terms of the settlement agreement, the defendant paid $245,000.00, and the plaintiff and plaintiff's counsel acknowledged that plaintiff's counsel was entitled to no more than 25 percent of the settlement in attorney's fees. See Docket Entry No. 108. By agreed order of dismissal entered February 7, 2007 (Docket Entry No. 67), the case was dismissed.

On August 1, 2007, McClendon filed a motion for recovery of attorney's lien (Docket Entry No. 69), to which plaintiff responded (Docket Entry No. 70). McClendon's motion was granted by order entered August 28, 2007 (Docket Entry No. 72), to the extent that the Court declared that McClendon was entitled to have an attorney's lien. However, McClendon was ordered to submit additional filings justifying fees to which she asserted she was entitled, the Estate was provided an opportunity to respond, and the matter referred to the Magistrate Judge.

---

[1] The notice included a certificate of service to the plaintiff, Davidson, and defendant's counsel.

Thereafter, in addition to issues raised relating to discovery, striking a document, and interpleading funds, the parties made their respective filings addressing fees to which McClendon is entitled. See Docket Entry Nos. 79-84, and 90-92. The parties also made additional filings as directed by order entered February 6, 2009 (Docket Entry No. 101). See Docket Entry Nos. 103-108.

## II. MATTERS AT ISSUE

It is important to clarify what is at issue and what is not at issue. First, the issue before the Magistrate Judge is not whether McClendon is entitled to any attorney's fees. Rather the question is the amount of her fees. Tangentially, whether Davidson knew or should have known about McClendon's attorney's fee lien is immaterial.

Second, McClendon has made it crystal clear that she does not seek any fees or expenses from the Estate itself but, in effect, seeks to share in the attorney's fees received by Davidson from the settlement proceeds. Of the $245,000.00 in settlement proceeds, Davidson was entitled to no more than 25 percent in accord with 28 U.S.C. § 2678, the settlement agreement itself (Docket Entry No. 108), and the attorney-client agreement (Docket Entry No. 84, at 2-3). Therefore, Davidson received $62,500.00 as attorney's fees, and the plaintiff received $183,750.00. According to Davidson, all costs and expenses were paid by the plaintiff so no expenses were reflected in the $62,500.00 that he received.

However, McClendon has sought costs and expenses in addition to her attorney's fees. Since it was not clear to the Court whether the costs/expenses would come from Davidson's attorney's fees or from the Estate, the Court directed the parties to provide the Court with their respective positions on that issue.

Davidson responded that 28 U.S.C. § 2412, addressing awards of costs against the government, applies to FTCA claims. Docket Entry No. 103. Thus, it is Davidson's position that costs must be paid from the portion of the settlement received by the plaintiff, not from his attorney's

3

fees. Id. Davidson never sought an award of costs against the government nor was the subject of costs addressed in the settlement agreement, presumably because Davidson did not have any outstanding expenses that he had advanced since the plaintiff had borne the costs.

In her responsive statement, McClendon explains that a significant portion of the expenses, specifically $2340.00, was really for attorney's fees for assistance of counsel through Counsel on Call. Docket Entry No. 104. McClendon also represents that she is willing to waive recovery of any expenses, except for the payment to Counsel on Call, if the Court determines that such payment would come from the Estate rather than from Davidson. Id.

### III. MCCLENDON'S ATTORNEY'S FEES

In her affidavit (Docket Entry No. 79-1), McClendon attests that Mr. Simpson retained her to represent him in this matter in January 2001, that she spent approximately 145.25 hours in such representation both in the administrative proceeding and after she filed the complaint in this case. She also incurred $4602.40, in expenses, $2340.00 of which represented the expenses of Counsel on Call. McClendon represents that her hourly fee during her representation of Mr. Simpson was "from $150.00 to $200.00 per hour" and explains that the actual amount of her attorney hours is greater than 145.25. First, she explains that she reconstructed her time and expense records from her "calendars, notes invoices, and other materials in the file for this matter," Docket Entry No. 79-1 at 2, so she may well have understated her time. See Docket Entry No. 79, at 6-7. In addition, she hastily provided her original documents to Mr. Simpson when he obtained new counsel and some information from those files was not available to her when she reconstructed her attorney's fees. Docket Entry No. 79, at 7; Docket Entry No. 79-1, at 2. She also described her representation of Mr. Simpson as including "conducting factual research, preparation and completion of a claim form, sending various correspondence, conducting interviews with witnesses, medical providers, and other individuals, conducting legal research, preparation and filing of a Complaint, preparation and filing

4

of initial disclosures, and attending an Initial Case Management Conference." Docket Entry No. 79-1, at 3.

Citing Tennessee law, McClendon asserts that, when an attorney is discharged from representation without cause, she is entitled to the contract price of her representation or recovery under a quantum meruit theory, whichever is greater. In contrast, if the attorney is discharged for cause, she is entitled to recover based on her contract price or under quantum meruit, whichever is less. The parties dispute whether or not McClendon was discharged for cause. However, McClendon assumes arguendo that Davidson is correct that she was discharged for cause and asserts that she is entitled to fees based on the benefit conferred on the plaintiff based on several factors set forth in Johnson v. Hunter, 1999 WL 1072562 (Tenn. Ct. App. Nov. 30, 1999), and DR 2-106 of the Tennessee Code of Professional Responsibility in effect during the period of representation.

McClendon also relies upon the 1970 case of Jaslow v. United States, 308 F.Supp. 1164 (E.D.N.Y. 1970), in addressing the apportionment of payment of fees under the FTCA, and the Court's comments that an "originating attorney customarily receives a substantial portion of any fee in contingent matters [and] [h]is fee is not necessarily limited to a pro rata based on the number of hours spent, although it must be based on a division of services or responsibility." 308 F.Supp. at 1165. The Jaslow Court cited no case law for that proposition, other than the ABA Canon of Professional Ethics, in force at that time, nor does McClendon cite any more recent law for that proposition. The Court declines to accept the proposition that McClendon is entitled to a "substantial portion" of the fee simply because she first represented the plaintiff.

Instead, the Court finds that it must determine if McClendon's fees are reasonable. Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 616 (6th Cir. 2007); Pascal v. Flagstar Bank, 297 F.3d 435 (6th Cir. 2002); Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999). A determination of reasonableness begins with the "lodestar" method of calculation, i.e, determining a reasonable fee based on a reasonable hourly rate and reasonable number of hours of service. The United States

5

Supreme Court described the lodestar method in Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L.Ed.2d 40, 103 S.Ct. 1933 (1983),[2] as follows:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

A list of many of the factors to consider in establishing the lodestar fee and adjusting the fee was enunciated by the Fifth Circuit Court of Appeals in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). The Johnson factors have now become part of the settled law of lodestar analysis under both United States Supreme Court and Sixth Circuit decisions. These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[3]

Hensley, 461 U.S. at 430 n.4; Blanchard v. Bergeron, 489 U.S. 87, 92 n.5, 103 L.Ed.2d 67, 109 S.Ct. 939 (1989); Paschal, supra.

McClendon represents that her hourly rate was between $150.00 and $200.00 during her representation of Mr. Simpson. However, she does not indicate whether her rate was either $150.00 or $200.00 or whether it was, for some period of time, something in between. She also does not provide any information about when her rate was $150.00 or when it was $200.00. Since the Court cannot divine this information, it must base its award on the $150.00 rate. Although McClendon

---

[2] The Court notes that the "lodestar" analysis was not articulated by the Supreme Court in Hensley until after the 1970 Jaslow case.

[3] The Court notes that the factors set forth in Johnson, supra, as cited by McClendon, mirror, to significant extent, the Hensley factors.

6

has not provided any affidavits showing that her hourly rate was the prevailing market rate in the community, the Court finds that it is not necessary to do so based on the $150.00 hourly rate, and Davidson has not suggested otherwise.

It is clear that McClendon represented Mr. Simpson on other matters in addition to this case and it also appears from her Time and Expenses (Docket Entry No. 79-1) that she had a social relationship with him. Therefore, there are time entries for which McClendon has not included a specific amount of time, and there may be more conversations and meetings with Mr. Simpson than she might have had with a client with whom her relationship related solely to this action and was strictly professional. The Court's task is made more difficult because the subject matter of conversations and meetings with Mr. Simpson is not provided and persons with whom McClendon had conversations or otherwise communicated are not identified or described. Although the Court agrees with McClendon that the reconstruction of time records, in contrast to contemporaneously prepared records, is not impermissible, it can lead to imprecise entries, providing the Court with little ability to evaluate the time spent.

Specific items that do not appear to relate to this case include the following:

1. Telephone conversations with Mr. Simpson and Mark Fraley, apparently relating to Mr. Simpson's claim for Social Security disability benefits on March 5, 2001, March 10, 2001, March 14, 2001, March 16, 2001, and August 16, 2001, and attendance at a hearing before the Social Security ALJ on December 6, 2002, will not be considered, and the amount of hours will be reduced by 5.05.

2. It appears that McClendon represented Mr. Simpson or was otherwise involved in a case against Continental Insurance. It does not appear that such a lawsuit has any relationship to the instant action. Therefore, the time listed on April 27, 2001 and October 4, 2001, will not be considered, and the amount of hours will be reduced by 9.3 hours.

7

3. It appears that the November 12, 2003, entry relates to issues regarding insurance, medications, and pain management and it is not clear how those subjects relate to this lawsuit. The 2.9 hours will not be considered.

4. The March 12, 2004, entry specifies a discussion on taxation issues. It is not clear how taxation issues relate to this case. The .4 hours will not be considered.

Some of the entries for meetings, telephone conversations, and emails between McClendon and Mr. Simpson clearly relate to this lawsuit. For many, however, it is not at all clear how they relate, if at all, to this lawsuit. It appears that there may have been unnecessarily frequent communications about Mr. Simpson's health and about other matters that may have been unrelated to this case. Therefore, the Court will reduce by half the time spent during conversations, meetings and/or emails on February 2, 2001, March 28, 2001, April 3, 2001, April 17, 2001, April 23, 2001, May 10, 2001, June 22, 2001, June 26, 2001, August 2, 2001, August 15, 2001, September 7, 2001, September 19, 2001, October 16, 2001, October 18, 2001, November 16, 2001, March 13, 2002, July 31, 2002, September 6, 2002, September 23, 2002, September 24, 2002, September 25, 2002, October 15, 2002, October 30, 2002, November 6, 2002, November 19, 2002, January 10, 2003, February 5, 2003, March 7, 2003, March 13, 2003, March 24, 2003, July 22, 2003, August 20, 2003, September 9, 2003, November 11, 2003, November 18, 2003, November 24, 2003, December 18, 2003, December 19, 2003, December 24, 2003, February 4, 2004, March 12, 2004, and April 27, 2004. Thus the amount of hours will be reduced by 8.4.

The total hours of 145.25 will therefore be reduced by 20.05 hours, for a total of 125.2. Multiplying 125.2 times $150.00 results in $18,780.00.

This figure would also comport with an analysis under a quantum meruit theory. McClendon represented Mr. Simpson through the administrative process and filed suit on his behalf. Were it not for that representation, the plaintiff would not have been in the position to recover at all. Although there was not a great deal of activity once the case was filed in this Court, it appears that

McClendon's services to the plaintiff during the administrative process were not insubstantial. See Docket Entry Nos. 91-1 through 91-3.

## IV.  MCCLENDON'S COSTS/EXPENSES

The Court finds that costs and expenses are not and should not be included in attorney's fees and therefore reimbursement for any such expenses would come from the Estate and not from Davidson.  Since McClendon has indicated that she does not want to reduce the settlement amount paid to the plaintiff, expenses will not be awarded to her.

However, McClendon argues that her payment of expenses for the assistance of Rachel Waterhouse, an attorney with Counsel on Call, are not really expenses but are essentially attorney's fees and therefore she should be entitled to $2340.00, for Ms. Waterhouse's fees.  The parties dispute whether Mr. Simpson approved of this expense. See Docket Entry No. 91-1, at 3; Docket Entry No. 81, at 9.  However, McClendon made it clear that Ms. Waterhouse was not representing Mr. Simpson.  Docket Entry No. 84 ("[y]ou should also understand that Ms. Waterhouse is a contractor of mine in this case and through her involvement she is not creating an attorney/client relationship with you.")  Under these circumstances, it is difficult to categorize the expenses for Ms. Waterhouse as attorney's fees.  While McClendon's consultation with Ms. Waterhouse and other attorneys may be properly compensable as line items for McClendon's attorney's fees, the expenses charged to McClendon by a "contractor" are just that--expenses.

No costs or expenses should be awarded.

## V.  RECOMMENDATION

For the reasons provided above, it is recommended that Phillip Davidson be directed to pay to Amanda McClendon the amount of $18,780.00 pursuant to her attorney's lien.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice, and must state with particularity the specific

9

portions of this Report & Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

        Respectfully Submitted,

        *[signature: Juliet Griffin]*
        JULIET GRIFFIN
        United States Magistrate Judge